United States District Court
Southern District of Texas
**ENTERED**
January 09, 2019
David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| LEOBARDO ARAGUZ,<br>Plaintiff | §<br>§<br>§<br>§ | |
| v. | §<br>§<br>§ | Civil Action No. 1:18-cv-148 |
| DEMPSIE CLINTON, ET AL.,<br>Defendants | §<br>§ | |

**MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

The Court is in receipt of three motions filed by the City of Harlingen, Texas. *See* Dkt. No. 1-1 at 50, 56; Dkt. No. 4. It is recommended that the Court: (1) **GRANT** the City's Motion to Dismiss Defendant Scott Vega (Dkt. No. 1-1 at 50); (2) **GRANT** the requests contained in the City's Plea to the Jurisdiction (Dkt. No. 1-1 at 56); and (3) **GRANT** the City's Motion for Partial Judgment on the Pleadings (Dkt. No. 4).[1] Additionally, for the reasons provided below, it is recommended that the Court refrain from ruling upon the City's request for dismissal of Araguz's Fourth Amendment malicious prosecution claims at this juncture.

**I. Jurisdiction**

The Court has federal question jurisdiction over this civil action because Plaintiff Leobardo Araguz's Original Petition raises claims under 42 U.S.C. § 1983.

---

[1] The City's Motion for Partial Judgment on the Pleadings was filed on behalf of itself, the City of Harlingen Police Department, and Defendant Scott Vega. Dkt. No. 4 at 1.

*See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); 28 U.S.C. § 1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.").

## II. Background

Plaintiff Araguz initiated this action by filing suit in the 107th Judicial District Court of Cameron County, Texas on May 24, 2018. Dkt. No. 1-1 at 1. Araguz's Original Petition names the City, the City of Harlingen Police Department, Defendant Scott Vega, and Dempsie and Victoria Clinton as Defendants. *Id*. Araguz identifies himself as a successful and well-respected contractor in Cameron County, Texas, who previously worked as a football player in the National Football League. *Id*. at 8. His Original Petition makes the following allegations:

1.      In February of 2016, Araguz's company, Araguz Construction, LLC, (hereinafter, "AC") entered into a construction agreement with Dempsie and Victoria Clinton (hereinafter, the "Clintons"). Dkt. No. 1-1 at 8.[2] Texas Regional Bank ("TRB") provided financing for the construction. Initially, TRB issued "first draw proceeds in the amount of $44,888," in the form of a check payable to AC and the

---

[2] The record indicates that the construction agreement concerned AC's agreement to build a house for the Clintons in Laguna Vista, Texas. Dkt. No. 1-1 at 32.

Clintons. *Id.* The Clintons "provided authority" to Araguz, allowing him to endorse the check on their behalf. *Id.* Araguz endorsed the check on behalf of all parties and deposited the funds into AC's bank account. *Id.*

2. As construction proceeded, Araguz continued to endorse checks on behalf of the Clintons with their permission. No. 1-1 at 8. Prior to the issuance of the final check, a dispute arose between AC and the Clintons. *Id.* AC then arranged for the execution of all closing documents and releases, and the Clintons did not object. *Id.* at 8-9. Araguz endorsed the final check on behalf of the Clintons, relying upon the precedent established by the Clintons through the course of construction. *Id.* at 9. Araguz deposited the funds, and the Clintons obtained financing and insurance without issue. *Id.*

3. After Araguz endorsed and deposited the final check, the Clintons lodged a complaint with TRB. Dkt. No. 1-1 at 9. As a result, TRB demanded a reversal of the deposited funds from First Community Bank. AC and the Clintons discussed the matter, and TRB ultimately issued a duplicate check made payable to AC. AC endorsed the check and deposited the funds. *Id.*

4. On or about November 3, 2016, the Clintons filed a police report with Scott Vega, the City of Harlingen, and the City of Harlingen Police Department (hereinafter, the "City Defendants"). Dkt. No. 1-1 at 9. The Clintons falsely claimed that Araguz had endorsed their names on the final check from TRB without their permission. *Id.* Despite knowing that Araguz had the authority to endorse the final check on the Clintons' behalf, the City Defendants arrested Araguz in front of his

family on or about May 27, 2017.  *Id*. at 10.  The City Defendants then forwarded a theft-by-forgery case to the Cameron County District Attorney's Office.  *Id*. Defendant Vega also made derogatory comments about Araguz and ignored questions posed by other officers regarding whether the case against Araguz was meritorious. *Id*. at 10 ("When questioned by other officers about [the] case against [] Araguz . . . Vega ignored the facts . . . maliciously, telling other officers 'Fuck Leo' and other similar derogatory comments.  It is believed that [] Vega was suspended or demoted as a result of his conduct in this matter.") (errors in original).

5.    Araguz obtained an attorney and posted bond on or about May 28, 2017. Dkt. No. 1-1 at 10.   After the reviewing the charges against him, the District Attorney's Office determined that the charges were meritless and dismissed the criminal complaint against Araguz.  At some later point, Araguz learned that the Clintons had made written and verbal representations that he had committed forgery.  *Id*.

Araguz contends that these alleged facts support numerous causes of action against the City Defendants and the Clintons.  He asserts that the Clintons are liable to him for libel, slander, defamation per se, negligence, malicious prosecution, abuse of process, intentional infliction of emotional distress, false imprisonment, and violations of 42 U.S. C. § 1983.  Dkt. No. 1-1 at 11-13.  He asserts that Vega is liable to him for malicious prosecution, false imprisonment and violations of 42 U.S. C. § 1983.  *Id*. at 12-13.  He asserts that the City of Harlingen and the City of Harlingen Police Department are liable to him for malicious prosecution, false imprisonment

and violations of 42 U. S. C. § 1983. *Id.* In addition to compensatory damages, he seeks costs of suit, attorney's fees, prejudgment interest, post-judgment interest, and exemplary damages. *Id*. at 14.

The City Defendants timely removed Araguz's action to this Court on September 18, 2018. Dkt. No. 1 at 3. The Clintons consented to removal. *Id*. at 3. Prior to removal, the City filed its Plea to the Jurisdiction and its Motion to Dismiss Defendant Scott Vega. Dkt. No. 1-1 at 50, 56. After removal, the City filed a Motion for Partial Judgment on the Pleadings on behalf of the City Defendants. Dkt. No. 4. On September 19, 2018, the City Defendants urged the Court to consider the requests for relief contained in all three motions, regardless of when and where the motions were originally filed. Dkt. No. 5 at 2. On November 1, 2018, the Court granted this request, along with Araguz's oral motion for leave to file late responses to each motion. *See* Minute Entry Dated November 1, 2018, and Dkt. No. 16 at 1. In granting Araguz's oral motion, the Court notified Araguz that a failure to file responses to the motions would "be construed as an agreement that the motions should be granted." Dkt. No. 16 at 1.

Araguz has filed a "Response to Defendants' Motion for Partial Judgment on the Pleadings" (hereinafter, Araguz's "Response"), and the City has filed a "Reply" to Araguz's Response on behalf of the City Defendants. Dkt. Nos. 17 and 19.[3] Araguz has not filed a response to the City's Plea to the Jurisdiction or its Motion to Dismiss

---

[3] The Clintons have also filed a Motion to Dismiss, which will be addressed in a separate Report and Recommendation. *See* Dkt. No. 18.

Defendant Scott Vega.  He has also filed no response to the City's argument that the City of Harlingen Police Department ("CHPD") should be dismissed because it is a subdivision of the City of Harlingen, and thus cannot be sued as a separate entity.  *See* Dkt. No. 4 at 1-2, 6-7.  Instead, he has stated that he does not contest the assertion that CHPD is a subdivision of the City of Harlingen.  Dkt. No. 17 at 5.

### III.  Legal Standards

**A.    Fed. R. Civ. P. Rule 12(c).**  Rule 12(c) of the Federal Rules of Civil Procedure states, in its entirety, that a party "may move for judgment on the pleadings" after "the pleadings are closed" so long as they move "early enough not to delay trial[.]"  Fed. R. Civ. P. 12(c).  The filing of a responsive pleading, such as an answer, closes the pleadings.  *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999); *Young v. City of Houston*, 599 F. App'x 553, 554 (5th Cir. 2015) (unpublished).  A district court must ordinarily treat a motion to dismiss for failure to state a claim as a motion for judgment on the pleadings under Rule 12(c) if it is submitted after the filing of a responsive pleading.  *Traxys N. Am., LLC v. Fila Oilfield Servs., LLC*, No. CV H-16-0721, 2017 WL 4046342, at *4 (S.D. Tex. Sept. 12, 2017) (citing *Jones v. Greninger*, 188 F.3d 322, 324).  "A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (citing *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004)).

**B.     FED. R. CIV. P. Rule 12b(6).**  Dismissal is appropriate under Rule 12(b)(6) if the plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12 (b)(6).  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a).  *Richter v. Nationstar Mortgage, LLC*, Civil Action No. H–17–2021, 2017 WL 4155477, at *1 (S.D. Tex., 2017).  Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  To withstand a Rule 12(b)(6) challenge, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. 544, 570.  This means that a complaint, taken as a whole, "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory[.]" *Id*. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984) (internal quotation marks omitted; emphasis and omission in original)).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. 544, 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 2944 (2007)).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)."  *Id*.  Although the Supreme Court in *Twombly* stressed that it did not impose a probability standard at the pleading stage, an allegation of a mere possibility of relief does not satisfy the

threshold requirement of Rule 8(a)(2) that the "plain statement" of a claim include factual "allegations plausibly suggesting (not merely consistent with)" an entitlement to relief. *Id*. at 557. A court need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions[.]" *Plotkin v. IP Axess, Inc*., 407 F.3d 690, 696 (5th Cir. 2005) (citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc*., 365 F.3d 353, 361 (5th Cir. 2004)).

When considering whether judgment on the pleadings is appropriate, courts are to consider the pleadings alone. *Richter v. Nationstar Mortgage, LLC*, 2017 WL 4155477, at *2 (*Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co*., 313 F.3d 899, 904 (5th Cir. 2002)). Still, courts may also consider the documents that a defendant attaches to its motion to dismiss if the documents "are referred to in the plaintiff's complaint and are central to her claim." *Id*. (citing *Causey v. Sewell Cadillac–Chevrolet, Inc*., 394 F.3d 285, 288 (5th Cir. 2004); *In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007); and 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 509–10 (3d ed. 2004)). Further, if an exhibit is attached to a plaintiff's complaint, it is considered part of the complaint "for all purposes." *Id*. (citing FED. R. CIV. P. 10(c); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp*., 355 F.3d 370, 375 (5th Cir. 2004)).

## IV. Discussion

**A.** **The City's Plea to the Jurisdiction and Motion to Dismiss Defendant Scott Vega**. The City's Plea to the Jurisdiction and Motion to Dismiss

Defendant Scott Vega correctly represent the applicable law and facts of this case. The City's Motion to Dismiss Defendant Scott Vega correctly notes that, when a plaintiff does not elect to sue a government employee in his individual capacity, as is the case here,[4] all common law tort claims against the employee relating to actions taken with the course/scope of the employee's work are presumed to be against his government employer.  *See Matthews v. Harris Cty.*, No. CV H-18-0014, 2018 WL 3818001, at *3–5 (S.D. Tex. Aug. 10, 2018) (summarizing the applicable authority in this Circuit).  As such, the government unit is the proper defendant and claims against the employee are subject to dismissal under the Texas Tort Claims Act ("TTCA").  *Id.*[5]

The City's Plea to the Jurisdiction asserts that Araguz's state claim of malicious prosecution against the City is subject to dismissal because: (1) malicious prosecution is an intentional tort; (2) the City's sovereign immunity protects it against intentional tort claims; and (3) the TTCA did not waive this immunity.  Dkt. No. 1-1 at 56-61.  Malicious prosecution is an intentional tort.  *Carmona v. Wright*, No. CV H-16-3664, 2017 WL 3503691, at *8 (S.D. Tex. Aug. 15, 2017) (citing *Fink v. Anderson*, 477 S.W.3d 460, 468 (Tex. App.-Houston [1st Dist.] 2015, no pet.)).  Unless Texas has waived immunity, Texas governmental units enjoy immunity from suit.

---

[4]  *See* Dkt. No. 1-1 at 6-14.

[5]  The City's Motion to Dismiss Defendant Scott Vegas primarily focuses on the propriety of dismissing Araguz's state malicious prosecution claim against Vega.  *See generally* Dkt. No. 1-1 at 50-55.  However, the City's Motion also correctly argues that *all* state tort theories alleged against Vega are subject to dismissal.  *Id.* at 51-53.

*Matthews v. Harris Cty.*, No. CV H-18-0014, 2018 WL 3818001, at *3 (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004)).  "Because the [TTCA] is the only, albeit limited, avenue for common-law recovery against the government, all tort theories alleged against a governmental unit . . . are assumed to be 'under [the Tort Claims Act]' for the purposes of [Tex. Civ. Prac. & Rem. Code § ('Section') ] 101.106.'"  *Id.* (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008), and citing *Bustos v. Martini Club*, 599 F.3d 458, 463 (2010)).  The TTCA did not waive Texas's immunity from intentional tort claims.  *Id.* (citing Tex. Civ. Prac. & Rem. Code §§ 101.021 and 101.057).  Thus, Texas governmental units are immune from intentional tort claims such as malicious prosecution.  *Id.*

The City's Plea to the Jurisdiction additionally argues that Araguz may not recover exemplary damages against the City under state or federal law.  Dkt. No. 1-1 at 61-62.  The City is correct.  "Precedent is clear that 'a municipality is immune from punitive damages under 42 U.S.C. § 1983.'"  *Quinn v. Guerrero*, No. 4:09CV166, 2016 WL 4529959, at *13 (E.D. Tex. Aug. 9, 2016), *report and recommendation adopted*, No. 4:09CV166, 2016 WL 4508227 (E.D. Tex. Aug. 28, 2016), *aff'd*, 863 F.3d 353 (5th Cir. 2017) (quoting *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) and citing 42 U.S.C. § 1981a(b)(1)).  "The TTCA further bars any such claims of punitive damages.  *See* Tex. Civ. Prac. & Rem. Code § 101.024 ('This chapter does not authorize exemplary damages.')."  *Id.*  *See also May v. City of Arlington, Texas*, No. 3:16-CV-1674-L, 2018 WL 1569888, at *8 (N.D. Tex. Mar. 30, 2018) ("A

municipality is immune from an award of punitive damages for actions brought under § 1983. []  Likewise, a plaintiff is barred from recovering exemplary damages against a municipality on state law claims.") (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271), Tex. Civ. Prac. & Rem. Code, § 101.024; *Kuhl v. City of Garland*, 910 S.W.2d 929, 931 (Tex. 1995)).

In addition to the fact that the City's arguments are correct, Araguz has also presumptively agreed to the granting of the City's Plea to the Jurisdiction and Motion to Dismiss Defendant Scott Vega.  After failing to timely appear in state court (*see* Dkt. No. 1-1 at 3), respond to the City's three Motions, and appear at a scheduling conference in this Court, Araguz sought leave to file late responses to the City's motions.  *See* Minute Entry Dated November 1, 2018 (Show Cause Hearing), and Dkt. No. 16 at 1 (Notice and Order).  The Court granted leave but notified Araguz that a failure to file responses to the motions would "be construed as an agreement that the motions should be granted."  Dkt. No. 16 at 1.  Araguz has not filed a response to the City's Plea to the Jurisdiction, nor has he filed a response to the City's Motion to Dismiss Defendant Scott Vega.  In a submission filed on November 26, 2018, the City correctly noted that Araguz has presumptively agreed to the granting of the City's Plea to the Jurisdiction and Motion to Dismiss Defendant Scott Vega.  Dkt. No. 19 at 2.  Over a month has passed since the filing of the City's submission and Araguz has not contested the City's allegation or otherwise argued for the denial of its two motions.

Accordingly, for all of the foregoing reasons, it is **recommended that the Court grant: (1) the City's Motion to Dismiss Defendant Scott Vega (Dkt. No. 1-1 at 50); and (2) the requests contained in the City's Plea to the Jurisdiction (Dkt. No. 1-1 at 56)**.  Granting the City's Plea to the Jurisdiction will result in the dismissal of Araguz's claim against the City for exemplary damages, along with the dismissal of his claim against the City for malicious prosecution.  *See* Dkt. No. 1-1 at 56-62.  Granting the City's Motion to Dismiss Defendant Scott Vega will result in the dismissal of Araguz's state law claims against Scott Vega.  *See* Dkt. No. 1-1 at 50-54.  Once these claims are dismissed, thirteen of the claims contained in Araguz's Original Petition will remain.  Specifically, his Original Petition will contain nine purported claims against the Clintons,[6] two purported claims against Defendant Vega,[7] and two purported claims against the City of Harlingen/CHPD.  *See* Dkt. No. 1-1 at 11-13 (alleging that the City of Harlingen/CHPD is/are liable for violating the Fourth and Fourteenth Amendments under 42 U.S. C. § 1983).

**B.    The City's Request to Dismiss CHPD**.  Of the above-referenced thirteen claims, Araguz's claims against the CHPD are also subject to dismissal.  In its Motion for Partial Judgment on the Pleadings, the City argues that the CHPD is a subdivision of the City of Harlingen, and thus it cannot be sued as a separate entity.

---

[6]  *See* Dkt. No. 1-1 at 11-13 (alleging the Clintons are liable for libel, slander, defamation per se, negligence, malicious prosecution, abuse of process, intentional infliction of emotional distress, false imprisonment, and violations of 42 U.S. C. § 1983).

[7]  *See id*. at 12-13 (alleging the Vega is liable for violating the Fourth and Fourteenth Amendments under 42 U.S. C. § 1983).

Dkt. No. 4. at 1-2, 6-7.  Because it cannot be sued as a separate entity, the City argues that CHPD should be dismissed with prejudice.  *Id*.  Araguz does not respond to this argument in his Response, except to state that he agrees with the assertion that CHPD is a subdivision of the City of Harlingen.  Dkt. No. 17 at 5.  Thus, as Araguz has agreed that CHPD is a subdivision of the City, and presumptively agreed that the CHPD should be dismissed from this lawsuit with prejudice, it is **recommended that the Court dismiss CHPD from this lawsuit, with prejudice**.

   C.   **The City's Remaining Requests for Dismissal**.  The City's Motion for Partial Judgment on the Pleadings does not challenge Araguz's Fourth Amendment false imprisonment claim against the City or Vega under 42 U.S.C. § 1983.  *See generally* Dkt. No. 4; *see also* Dkt. No. 19 ("Defendants do not challenge Araguz's Fourth Amendment false imprisonment claim[.]").  Instead, this Motion asserts that Araguz's purported Fourteenth Amendment claims should be dismissed because Araguz's false imprisonment claims may only be brought under the Fourth Amendment, not the Fourteenth.  Dkt. No. 4 at 1, 3-5.

   Araguz's response to the City's Fourteenth Amendment argument is somewhat perplexing.  Instead of addressing the argument directly, Araguz accuses the City of ignoring his claims against Vega and the City for malicious prosecution in order to obtain dismissal of his § 1983 claims.  Dkt. No. 17 at 2.  He states that his Original Petition asserts malicious prosecution claims under § 1983 for violations of the Fourth and Fourteenth Amendments.  *Id*. at 1-2.  Araguz does not explain how the facts he has alleged give rise to claims under the Fourteenth Amendment, nor does

he provide any authority to support his argument. *See generally* Dkt. No. 1-1 at 6-14 and Dkt. No. 17. Araguz concludes by qualifying that he is not sure, after all, if the City's Motion for Partial Judgment on the Pleadings seeks dismissal of his § 1983 claims for malicious prosecution. Dkt. No. 17 at 5 ("It is unclear in Defendants' Motion for Judgment on the Pleadings whether it seeks dismissal of Araguz's cause of action under 42 U.S.C. 1983 relating to his claims for Malicious Prosecution.") (errors in original). To the extent the City's Motion seeks dismissal of those claims, however, Araguz contends that it should be denied. *Id*.[8]

In its Reply, the City argues, for the first time, that Araguz's Fourth Amendment § 1983 claims for malicious prosecution should be dismissed. Dkt. No. 19 at 10 ("Because he does not allege facts to establish either Defendant was in any way involved in the prosecution of charges against him after his arrest, any claim of malicious prosecution in violation of the Fourth Amendment should be dismissed."). This is so, the City argues, because Araguz only complains of actions which led to his arrest, rather than actions that occurred after his arrest. *Id*. at 8. To support a claim of malicious prosecution, the City claims that a plaintiff must complain of acts which constitute wrongful prosecution after arraignment, not mere wrongful imprisonment prior to arraignment. *Id*. at 8-9.

---

[8] Araguz also contends that the City's reliance upon Rule 12(c) of the Federal Rules of Civil Procedure is misplaced. Dkt. No. 6 at 5-6. Araguz is mistaken. The City filed its Motion for Partial Judgment on the Pleadings after the City Defendants had already filed their answer to Araguz's Original Petition. *See* Dkt. No. 1-1 at 43. As such, the City's reliance upon Rule 12(c) is proper. *See Supra* at 6 (containing the Court's discussion of FED. R. CIV. P. 12(c)).

Here, the Court finds it useful to note that certain facts have become muddled due to a lack of precision in Araguz's Original Petition and subsequent briefing. The following five clarifications are, therefore, in order:

1. Araguz's Original Petition asserts malicious prosecution claims against the City and Vega *without specifying whether he is asserting those claims under state or federal law*. *See* Dkt. No. 1-1 at 6-14.

2. As noted above, the City's Motion to Dismiss Defendant Scott Vega correctly argues that all of Araguz's *state* law claims against Vega are subject to dismissal. Dkt. No. 1-1 at 50-53 (noting that "all" common law tort claims against a government employee are presumed to be against the government unit, and, thus, subject to dismissal under the TTCA; and, referring to Araguz's malicious prosecution claim as a "state law tort claim"); *see also* Dkt. No. 19 at 2 (noting that, in its Motion to Dismiss Defendant Scott Vega, "Defendant City also moved to dismiss all state law tort claims against its employee, Defendant Vega.").

3. The City's Plea to the Jurisdiction correctly argues that Araguz's *state* claim of malicious prosecution against the City is also subject to dismissal because: (1) malicious prosecution is an intentional tort; (2) the City's sovereign immunity protects it against intentional tort claims; and (3) the TTCA did not waive this immunity. Dkt. No. 1-1 at 56-61 (discussing Araguz's malicious prosecution claim as a claim brought under Texas law).

4. Because the Court notified Araguz that a failure to respond to the City's Plea to the Jurisdiction and Motion to Dismiss Defendant Scott Vega would be

construed as an agreement that those Motions should be granted, and Araguz has failed to respond, Araguz has agreed to the dismissal of all state claims against Vega, and the state claim against the City for malicious prosecution. Thus, if the recommendations contained in this Report are adopted, no *state* malicious prosecution claims against Vega or the City will remain.

5.    To the extent that Araguz's Original Petition asserts malicious prosecution claims under § 1983 for violations of the Fourth Amendment,[9] neither Vega nor the City have moved to dismiss those claims in a motion. *See* Dkt. No. 1-1 at 50-55, 56-62 and Dkt. No. 4. Instead, the City makes an argument for the dismissal of those claims for the first time in its Reply. Dkt. No. 19 at 10 ("Because he does not allege facts to establish either Defendant was in any way involved in the prosecution of charges against him after his arrest, any claim of malicious prosecution in violation of the Fourth Amendment should be dismissed.").

The Fifth Circuit has stated that a district court may address an argument raised for the first time in a reply belief "as long as the court gives the nonmovant an adequate opportunity to respond." *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 292 (5th Cir. 2004) (discussing reply briefs filed in support of motions brought under FED. R. CIV. P. 56). Still, the Fifth Circuit has not "comprehensively identified all the circumstances under which a district court may rely on arguments and evidence presented for the first time in a reply brief[.]" *Gillaspy v. Dallas Independent School*

---

[9] For purposes of this Report and Recommendation, the Court will presume that Araguz's Original Petition is worded broadly enough to include Fourth Amendment malicious prosecution claims.

*Dist.*, 278 Fed.Appx. 307, 315 (5th Cir. 2008) (noting that Fifth Circuit jurisprudence on the subject is "less than clear.") (unpublished).  Regardless of what a court may do, a district court is not ordinarily obligated to rule upon an argument for dismissal raised for the first time in a reply brief when the argument for dismissal does not contest the court's jurisdiction.  *Id.* ("It is the practice of this court and the district courts to refuse to consider arguments raised for the first time in reply briefs.") (citing *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1437 (5th Cir. 1989) and *Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, 749 F.Supp. 758, 772 (N.D. Tex. 1990)).

In the present case, Araguz would have to seek leave to file a sur reply in order to respond to the City's argument for dismissal of his Fourth Amendment malicious prosecution claims.  Araguz has not sought leave, and the Court has not otherwise provided him with an opportunity to respond.  Further, the City's Reply cites to a Fifth Circuit opinion which casts doubt on its argument for dismissal.  *See* Dkt. No. 19 at 9 ("*But see Winfrey v. Rogers*, 901 F.3d 483, 492-93 (5th Cir. 2018)").

In *Winfrey v. Rogers,* the Fifth Circuit held that the plaintiff had raised a Fourth Amendment malicious prosecution claim under § 1983 when he alleged that material misstatements and omissions were used to obtain the warrant for his arrest. 901 F.3d 483, 492-93.  In holding that the plaintiff had raised a malicious prosecution claim, the Court also distinguished malicious prosecution claims from claims of false imprisonment.  *Id.*

> A false-imprisonment claim is based upon "detention without legal process." *Wallace* [*v. Kato*, 549 U.S. 384, 389 (2007)]. . . . A malicious-prosecution claim is based upon "detention accompanied . . . by wrongful institution of legal process." *Id*. at 390[]. . . . Johnson urges us to find that this case fits within *Wallace v. Kato*. There, the Supreme Court found that the plaintiff's unlawful warrantless-arrest Fourth Amendment claim resembled a false-imprisonment claim, because the constitutional violation occurred when the plaintiff was arrested without a warrant . . .  549 U.S. at 397[]. Law enforcement officers transported the fifteen-year-old plaintiff to a police station—without a warrant or probable cause to arrest him—and interrogated him into the early morning. *Id*. at 386, 389[]. . . .
>
> Here, we find that *Junior's claim is more like the tort of malicious prosecution, because Junior was arrested through the wrongful institution of legal process: an arrest pursuant to a warrant, issued through the normal legal process, that is alleged to contain numerous material omissions and misstatements.* Junior thus alleges a wrongful institution of legal process—an unlawful arrest pursuant to a warrant—instead of a detention with no legal process.

*Id*. (emphasis added, formatting altered).

Like the plaintiff in *Winfrey*, Araguz has claimed that material misstatements and omissions were used to obtain the warrant for his arrest. Dkt. No. 1-1 at 8-11. Accordingly, as the City has acknowledged,[10] *Winfrey* does not support the City's argument for dismissal of Araguz's Fourth Amendment malicious prosecution claims under § 1983. *Compare Winfrey*, 901 F.3d 483, 492-93, *with* Dkt. No. 19 at 8-10 (asserting that Araguz has not asserted a claim of malicious prosecution because he has only complained of acts which led to his arrest, rather than acts occurring after arraignment.). Because *Winfrey* undermines the City's argument, and because the City's argument was not raised until the reply stage, it is **recommended that the**

---

[10]  *See* Dkt. No. 19 at 9 (citing *Winfrey v. Rogers* as contrary authority).

**Court decline to consider the City's argument for dismissal of Araguz's Fourth Amendment malicious prosecution claims under § 1983 at this juncture**. The dispositive motion deadline in this case does not expire until May 15, 2019. Dkt. No. 14 at 2. Should the City wish to renew their request for dismissal of Araguz's Fourth Amendment malicious prosecution claims, they will have ample time to do so; and Araguz will have an opportunity to respond. Allowing additional briefing on the subject is also preferable because it is possible that *Winfrey* may prove non-dispositive.

The only request for relief still pending before the Court that remains unaddressed is the City's request for dismissal of Araguz's purported claims under the Fourteenth Amendment. As noted above, the City's Motion for Partial Judgment on the Pleadings asserts that these claims should be dismissed because Araguz's claims regarding his detention may only be brought under the Fourth Amendment, not the Fourteenth. Dkt. No. 4 at 1, 3-6.

> Although Araguz alleges the matters surrounding his detention violated the Fourteenth Amendment, it is the Fourth Amendment that provides the standard for evaluation of a wrongful detention or false arrest claim, not the Fourteenth. U.S. CONST. amend. IV; *Baker v. McCollan*, 443 U.S. 137, 144, 99 S. Ct. 2689, 2694, 61 L. Ed. 2d 433 (1979). "[I]t is the Fourth Amendment, and not substantive due process [under the Fourteenth Amendment], under which [a] claim [for freedom from criminal prosecution except upon probable cause] must be judged." *Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 811, 127 L. Ed. 2d 114 (1994). "[A]n unreasonable seizure [of a person] is part and parcel of a wrongful arrest claim under the Fourth Amendment." *Arnold v. County of El Dorado*, 2011 U.S. Dist. LEXIS 135432, p.7 (E.D. Cal. Nov. 23, 2011). Although the Fourteenth Amendment protects against deprivations of due process, Araguz cannot repackage a Fourth Amendment claim as a Fourteenth Amendment due process violation.

> *Albright*, 510 U.S. at 273, 114 S. Ct. at 812-13.  "Where a particular
> Amendment 'provides an explicit textual source of constitutional
> protection' against a particular sort of government behavior, 'that
> Amendment, not the more generalized notion of "substantive due
> process," must be the guide for analyzing these claims.'"  *Id.*, 510 U.S. at
> 273, 114 S. Ct. at 813, *quoting Graham v. Connor*, 490 U.S. 386, 395,
> 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989).  *See also County of
> Sacramento v. Lewis*, 523 U.S. 833, 842-43, 118 S. Ct. 1708, 1714-16, 140
> L. Ed. 2d 1043 (1998).

*Id.* at 3-4 (formatting altered).

Although he offers no authority to support his position, Araguz asserts that he has stated malicious prosecution claims for violations of the Fourteenth Amendment. Dkt. No. 17 at 4-5.  The Fifth Circuit's opinion in *Winfrey v. Rogers* forecloses Araguz's argument.  901 F.3d 483, 491-92.  In relevant part, the *Winfrey* Court stated:

> This Court has held that although there is no "freestanding
> constitutional right to be free from malicious prosecution," "[t]he
> initiation of criminal charges without probable cause may set in force
> events that run afoul of explicit constitutional protection—the Fourth
> Amendment if the accused is seized and arrested, for example."
> *Castellano v. Fragozo*, 352 F.3d 939, 945, 953 (5th Cir. 2003) (en banc).
> In *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114
> (1994), a plurality of the Supreme Court said that malicious-prosecution
> claims must be based on the Fourth Amendment, rather than on "the
> more generalized notion of 'substantive due process,' " because the
> Fourth Amendment is the explicit textual source against this type of
> government behavior.  *Id.* at 273, 114 S.Ct. 807 (quoting *Graham v.
> Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).  And
> recently, in *Manuel v. City of Joliet*, ⸺ U.S. ⸺, 137 S.Ct. 911, 197
> L.Ed.2d 312 (2017), the Supreme Court considered whether a plaintiff
> had stated a Fourth Amendment claim when he was arrested and
> charged with unlawful possession of a controlled substance based upon
> false reports written by a police officer and an evidence technician.  *Id.*
> at 915.  There, the Court said the plaintiff's "claim fits the Fourth
> Amendment, and the Fourth Amendment fits [the plaintiff's] claim, as
> hand in glove."  *Id.* at 917.  And it held "that the Fourth Amendment
> governs a claim for unlawful pretrial detention even beyond the start of
> legal process."  *Id.* at 920.

These cases fully support a finding that the Fourth Amendment is the appropriate constitutional basis for Junior's claim that he was wrongfully arrested due to the knowing or reckless misstatements and omissions in Johnson's affidavits.  We, therefore, hold that a Fourth Amendment claim is presented[.]

*Id.*

Araguz has not argued or demonstrated that *Winfrey*'s holding is inapplicable to his case.  Further, he has not otherwise asserted facts which would give rise to a claim under the Fourteenth Amendment.  Accordingly, as the City's Motion for Partial Judgment on the Pleadings seeks dismissal of Araguz's purported Fourteenth Amendment claims, the City's Motion should be granted.

## V.  Recommendation

It is recommended that the Court: (1) **GRANT** the City's Motion to Dismiss Defendant Scott Vega (Dkt. No. 1-1 at 50); (2) **GRANT** the requests contained in the City's Plea to the Jurisdiction (Dkt. No. 1-1 at 56); and (3) **GRANT** the City's Motion for Partial Judgment on the Pleadings (Dkt. No. 4). For the foregoing reasons, it is also recommended that the Court refrain from ruling upon the City's request to dismiss Araguz's Fourth Amendment malicious prosecution claims at this juncture.

## VI.  Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within

fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

Signed on this 9th day of January 2019.

_____
Ignacio Torteya, III
United States Magistrate Judge